[No. 46861. En Banc. August 7, 1980.]

DONNA L. STACK, ET AL, *Respondents,* v. CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, *Appellant,* DAVID L. PRESTON, ET AL, *Respondents.*

*James E. Nelson* and *George J. Fair,* for appellant.

*D. Roger Reed* and *Reed, Otterstrom & Giesa, P.S.* (*Carlton R. Reiter* and *David R. Bangsund,* of counsel), for respondents Stack.

*Bruce A. Wolf, George Kargianis,* and *Kargianis & Austin,* for respondent Simpson.

*William P. Wimberley, David M. Grant,* and *Richter, Wimberley & Ericson, P.S.,* for respondents Preston.

*Joseph P. Delay* and *Delay, Curran & Boling,* for respondents Carroll.

*Dan Stormer* and *Richard Smith* of *Spokane Legal Services Center,* for respondent Fry.

*Harold A. Ross* and *Paul R. Cressman, Jr.,* on behalf of Brotherhood of Locomotive Engineers, amici curiae.

STAFFORD, J.—This is an appeal from a trial court ruling that in an action brought under the Federal Employers' Liability Act (FELA) defendant/third party plaintiff Chicago, Milwaukee, St. Paul and Pacific Railroad Company (Milwaukee) could not counterclaim against its injured plaintiff employees or pursue a third party claim against other employee crew members for property damage allegedly caused by their negligence.

The case arises from a head–on collision of two trains owned and operated by Milwaukee. The Extra Train 171 West failed to stop short of a designated "meet" point to enable Train 200 East to take the siding. In the ensuing collision, Richard Stack, the head engineer of the westbound Extra, was killed and Allan Simpson, the head brakeman of the eastbound 200 was severely injured.

On May 18, 1977, respondent Simpson initiated an action for damages against Milwaukee under FELA, 45 U.S.C. §§ 51 *et seq.*[1] Shortly thereafter, respondent Donna Stack, widow of decedent Richard Stack, also filed a FELA action

---

[1] 45 U.S.C. § 51 provides in relevant part, at page 483:

"Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its . . . equipment."

against Milwaukee. In response, Milwaukee filed a counterclaim against respondent Stack and a third party claim against the remaining crew members of the Extra: engineer David Preston, fireman David Fry, conductor Thomas Carroll and rear brakeman Harry Carroll. Milwaukee's responsive actions alleged both active negligence and wanton or wilful misconduct by all members of the Extra's crew and sought, among other things, $1.5 million in property damage resulting from the collision.[2] No counterclaim was filed against respondent Simpson.

The trial court granted respondents' motions to consolidate the Stack and Simpson FELA actions pursuant to CR 42(a). The court also granted respondents' and third party defendants' motions to dismiss Milwaukee's responsive actions for failure to state a claim upon which relief could be granted, pursuant to CR 12(b)(6) and denied motions for summary judgment. On review, however, we consider the dismissal to be based on summary judgment. The record indicates that on the CR 12(b)(6) motion, the trial court considered Milwaukee's internal investigation reports, the transcript of the coroner's hearings and several affidavits. CR 12(c) provides that a CR 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in CR 56 if matters outside the pleadings are presented to and not excluded by the court. *Stevens v. Murphy*, 69 Wn.2d 939, 941–43, 421 P.2d 668 (1966).

Two issues are raised by Milwaukee's appeal. First, does Milwaukee have a common law right to sue its employees for property damage allegedly caused by their negligence? Second, if such a right exists, does the FELA bar Milwaukee's counterclaim and third party actions? For the reasons discussed below, we answer both questions in the affirmative.

---

[2]Milwaukee also originally sought indemnification from the third party defendants for any amounts it might have to pay in either the Stack or Simpson actions. On appeal, however, Milwaukee specifically abandoned its claim for indemnification.

## I
## MILWAUKEE'S COMMON LAW RIGHT TO SUE
## ITS EMPLOYEES

The trial court expressly ruled that Milwaukee did not have a common law cause of action against its employees for property damage arising out of ordinary acts of negligence committed within the scope of employment. We do not agree.

Common law property damage actions by an employer against its negligent employees are uncommon. In the case of railroads, one probable reason is that the employee would be exposed to possible economic loss so great that it would effectively discourage persons from working in that industry. Also, in cases where there is no insurance coverage, suing an employee who negligently causes extensive property damage is ordinarily a useless act because of the limited funds and income available to the employee. Further, as noted by the trial court, employees are often included within an employer's insurance coverage, thereby barring litigation between the two. See *Builders & Mfrs. Mut. Cas. Co. v. Preferred Auto. Ins. Co.*, 118 F.2d 118, 121–22 (6th Cir. 1941).

 Nevertheless, unless otherwise barred, it is well settled that an employer has a common law right of action against its own employees for property damage arising out of ordinary acts of negligence committed within the scope of employment. *Greenleaf v. Huntington & B.T.M. R. & Coal Co.*, 3 F.R.D. 24, 25 (E.D. Pa. 1942); *American S. Ins. Co. v. Dime Taxi Serv., Inc.*, 275 Ala. 51, 151 So. 2d 783 (1963); *Hiller v. Goodwin*, 258 Ala. 700, 65 So. 2d 152 (1953); *Granquist v. Crystal Springs Lumber Co.*, 190 Miss. 572, 1 So. 2d 216 (1941); *Stulginski v. Cizauskas*, 125 Conn. 293, 5 A.2d 10 (1939); *Emerson v. Western Seed & Irrigation Co.*, 116 Neb. 180, 216 N.W. 297 (1927). See *Monty v. Peterson*, 85 Wn.2d 956, 958, 540 P.2d 1377 (1975); *Doremus v. Root*, 23 Wash. 710, 63 P. 572 (1901). *See also* 53 Am. Jur. 2d *Master and Servant* § 108, p. 108–09 (1970); Restatement (Second) of Agency § 401 (1958).

Accordingly, we conclude the trial court erred in ruling that Milwaukee did not have a common law cause of action for property damage occasioned by its employees' alleged acts of ordinary negligence committed within the scope of employment.

## II
### THE IMPACT OF THE FELA ON MILWAUKEE'S RESPONSIVE ACTIONS

The trial court ruled that even assuming the existence of a common law right to sue one's employees for negligently caused property damage, Milwaukee's counterclaim and third party claims constituted "devices contrived to deprive plaintiffs of their right to an adequate recovery" and operated to chill justifiable FELA claims in violation of 45 U.S.C. §§ 55, 60. We agree.

Section 55 of the FELA provides in relevant part at page 484:

> *Any* contract, rule, regulation, or *device whatsoever, the* purpose or *intent of which shall be to enable any common carrier to exempt itself from any liability* created by this chapter, *shall* to that extent *be void*[.]

(Italics ours.) Section 60 of the FELA provides in relevant part at page 485:

> *Any* contract, rule, regulation, or *device whatsoever,* the purpose, *intent, or effect of which shall be to prevent employees* of any common carrier *from furnishing voluntarily information* to a person in interest *as to the facts incident to the injury or death of any employee, shall be void*[.]

(Italics ours.)

██ Milwaukee's responsive actions violate sections 55 and 60 in two ways. First, section 60 is violated because the third party claims operate to inhibit testimony by the third party defendants as to the extent of their own negligence in causing the collision and resultant injury of Simpson and death of Stack. Since, in respondents' FELA actions, the negligence of the third party defendants is imputed to Milwaukee (45 U.S.C. § 51), the full and fair revelation of their

negligence would, in turn, be largely determinative of their personal liability to Milwaukee in the third party action. As aptly observed by the trial court, "the crew's testimony will be affected because they will be reluctant to testify candidly when their own pocketbooks are in jeopardy." Second, Milwaukee's responsive actions violate section 55 because the ultimate threat of "retaliatory" legal action would have the effect of limiting Milwaukee's liability by discouraging employees from filing FELA actions. Further, it would have the effect of reducing an employee's FELA recovery by the amount of property damage negligently caused by the employee.

Milwaukee contends the FELA does not impair a common law right to sue its employees for property damage because the Act only covers claims made by employees against the railroad but is silent about railroads suing employees. Concerning this apparent silence Milwaukee urges this court to follow the reasoning of *Schosboek v. Chicago, M., St. P. & P. R.R.*, 191 Wash. 425, 426, 71 P.2d 548 (1937), in which we said:

> An examination of the Federal employers' liability act discloses that it is silent in regard to actions by an injured employee against third parties. Hence, Congress clearly intended to preserve the common law right of action by an injured employee against third parties by not expressly abrogating the same.

*Schosboek* is inapposite, however, The common law right of action by an employee against a third party in no way abridges any substantive right the employee may have against the employer. *Lee v. Central of Ga. Ry.*, 252 U.S. 109, 110–11, 64 L. Ed. 482, 40 S. Ct. 254 (1920). As we have previously noted, Milwaukee's responsive actions clearly impair respondents' right to sue under the FELA.

Milwaukee also contends its responsive actions do not constitute a "device" under either section 55 or 60 of the FELA. It is asserted that the legislative history of the FELA indicates Congress was primarily concerned with employment contract language which operated as a waiver

or limitation on an employee's right to sue his or her employer. *See* H.R. Rep. No. 1386, 60th Cong., 1st Sess., 4436 *et seq.* (1908). Milwaukee attempts to distinguish this situation from the instant case wherein the railroad seeks to exercise its own right to sue. We reject such a narrow interpretation of sections 55 and 60. The trial court's broad interpretation of the term "device" is supported both by the purpose of the act and by case authority.

In *Kernan v. American Dredging Co.,* 355 U.S. 426, 432, 2 L. Ed. 2d 382, 78 S. Ct. 394 (1958), the United States Supreme Court stated:

> Congress intended the creation of no static remedy [under the FELA], but one which would be developed and enlarged to meet changing conditions and changing concepts of industry's duty toward its workers.

More specifically, in regard to section 55 of the FELA, it has been noted:

> The drafters of the Federal Employers' Liability Act legislation intended that the Act provide an *effective* and readily *available* remedy for negligence–related injuries in the railroad industry. . . .
>
> . . .
>
> [Section 55] declares a public policy to void releases or *other exculpatory devices procured under circumstances that indicate an attempt to avoid Federal Employers' Liability Act liability.* . . .
>
> . . .
>
> To the extent coercive tactics are used by railroads against their injured employees to discourage resort to Federal Employers' Liability Act litigation, the result is an impermissible chill on rights created by Congress, and which as a matter of public policy and natural law inheres in each employee as a human being. Any chilling effect can be expected to extend not only to prospective Federal Employers' Liability Act plaintiffs, but to all employees and their families. It could be expected to prevent unfavorable testimony as well as the filing of lawsuits. This result is intolerable.

*Kozar v. Chesapeake & O. Ry.,* 320 F. Supp. 335, 383–85 (W.D. Mich. 1970).

162

We also note section 60 of the FELA prohibits any device which has the *effect* of inhibiting the voluntary furnishing of information by an employee. Thus, it is apparent section 60 focuses on the result of employer action, not on the precise nature of the conduct itself. Rather than unduly restrict the scope of section 60, we interpret it to prohibit *any* action by an employer which effectively restricts employee information as to the facts incident to an employee's injury or death.

Accordingly, although Milwaukee has a common law right to sue its employees for negligently caused property damage, we conclude Milwaukee's responsive actions will operate to inhibit testimony by the third party defendants and also will have the effect of limiting Milwaukee's liability in respondents' FELA actions. Milwaukee's counterclaim and third party actions thus violate sections 55 and 60 of the FELA and are therefore void.

The trial court's dismissal of Milwaukee's counterclaim and third party actions is affirmed.

UTTER, C.J., and ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied October 28, 1980.